ORIGINAL

Approved: _Mathew Andrews / CLH_
MATHEW ANDREWS
Assistant United States Attorney

Before:     THE HONORABLE PAUL E. DAVISON
            United States Magistrate Judge
            Southern District of New York

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                            :
UNITED STATES OF AMERICA,                   :     SEALED COMPLAINT
                                            :
    - v. -                                  :     Violation of
                                            :     18 U.S.C. §§ 1028(A), 1344, and 2
                                            :
JAHQUAN CRUMP AND TAFARI CRUMP,             :
                                            :     COUNTY OF OFFENSE:
          Defendants.                       :     WESTCHESTER
                                            :          19M9442
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        NICHOLAS IANNONE, being duly sworn, deposes and says that he is a Postal
Inspector with the United States Postal Inspection Service ("USPIS") and charges as follows:

## COUNT ONE
### (Bank Fraud)

        1.      From at least in or about March 2019 up to and including May 2019, in
the Southern District of New York and elsewhere, JAHQUAN CRUMP, the defendant, willfully
and knowingly, would and did execute and attempt to execute a scheme and artifice to defraud a
financial institution, the deposits of which were then insured by the Federal Deposit Insurance
Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned
by, and under the custody and control of, such financial institution, by means of false and
fraudulent pretenses, representations, and promises, to wit, JAHQUAN CRUMP deposited tens
of thousands of dollars of forged and/or fraudulent checks into various bank accounts, which he
either fraudulently opened in other people's names or fraudulently accessed with the account
owner's authorization, and then transferred the fraudulent deposits into his own personal bank
accounts.

        (Title 18, United States Code, Sections 1344 and 2.)

## COUNT TWO
### (Bank Fraud)

2.      From at least in or about April 2019 up to and including May 2019, in the Southern District of New York and elsewhere, TAFARI CRUMP, the defendant, willfully and knowingly, would and did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, TAFARI CRUMP accessed without authorization the bank account of an elderly victim, and then transferred money from that account into various bank accounts under his control.

(Title 18, United States Code, Sections 1344 and 2.)

<u>COUNT THREE</u>
(Aggravated Identity Theft)

3.      From at least in or about March 2019 up to and including May 2019, in the Southern District of New York and elsewhere, JAHQUAN CRUMP, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, JAQUAHN CRUMP used the personally identifying information of other persons to open bank accounts, without these people's authorization, during and in relation to the bank fraud charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

<u>COUNT FOUR</u>
(Aggravated Identity Theft)

4.      From at least in or about April 2019 up to and including May 2019, in the Southern District of New York and elsewhere, TAFARI CRUMP, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, TAFARI CRUMP used the personally identifying information of another person to open bank accounts, without that person's authorization, during and in relation to the bank fraud charged in Count Two of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

5.      I am a Postal Inspector and have been so employed since in or about September 2018. In my current position, I investigate violations of federal criminal laws, including violations of Title 18, United States Code, Section 1343. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, witnesses and others, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause,

it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6.      Based on my review of records with USPIS, I know that over the past several years, USPIS has received dozens of complaints from individuals living, working, or sending checks to, persons located in counties in the Southern District of New York, including, among others, Tarrytown and Westchester (collectively, the "Victims"). The Victims reported that the checks they had sent via mail were missing, "washed," and/or cashed by someone other than the intended recipients. Several of the Victims further reported that their bank accounts had been compromised, meaning someone had used their personal identifying information to open bank accounts without their authorization and/or used their bank accounts without their knowledge or authorization to conduct wire transfers.

7.      Based on my training and experience, I know that "washing" a check refers to a process of erasing details from the check to allow the check to be rewritten. The perpetrator often uses some type of solution, such as nail polish remover, to remove the name of the intended recipient and the stated amount on the check. The perpetrator then writes in the name of a new, fraudulent recipient and a new dollar amount.

8.      I further know, based on my training and experience, that perpetrators who "wash" checks, often acquire the personal identification of other people to create fraudulent bank accounts known as "assumed victim accounts," into which they deposit the washed checks. The perpetrators then withdraw the fraudulent funds from the assumed victim accounts using a variety of means and methods, including wire transfers into bank accounts they control.

9.      As set forth in greater detail below, there is probable cause to believe that JAHQUAN CRUMP and TAFARI CRUMP, the defendants, are each engaged in a scheme to deposit fraudulent, washed checks into assumed victim accounts, which they then transfer to bank accounts they respectively control.

<u>JAHQUAN CRUMP – Victim-1</u>

10.      Based on my interview of a victim living in the Westchester area ("Victim-1") and bank records from JP Morgan Chase, I know, among other things, the following:

a.      In or about early 2019, Victim-1 mailed a check, written from an account in his name, by dropping the envelope with the check in a USPS mailbox. Victim-1's check did not arrive at its destination.

b.      Instead, in or about April 2019, a check bearing the same account number was deposited into an account at JP Morgan Chase Bank (the "Chase Account").

11.      Based on an interview with Victim-1, I know that he has never written a

check to the Chase Account. Moreover, the dollar amount, memo line, and signature on the check were different from that on Victim-1's missing check. Based on my training and experience, as well as my review of the check, I believe that Victim-1's check had been "washed" using the methods described above.

12.     I further believe that the Chase Account is an "assumed victim account." Specifically, based on my review of account documents from JP Morgan Chase and records from the New York State Department of Motor Vehicles ("DMV"), I know, among other things, that the Chase Account was opened on or about March 25, 2019 via an online service called "Express Online Enrollment." The address listed on the account, however, is not the address the account owner listed in DMV records. It is instead "1210 BURKE AVE APT 1A, BRONX NY 10469" (the "Crump Address"). I further know that the Chase Account has been accessed repeatedly from the same IP Address: 96.246.185.85.

13.     Based on my review of account documents from Verizon Fios, I know that the customer name for the account associated with the above-IP Address is "JAHQUAN CRUMP" and the account address is "1210 BURKE AV, FL 1 APT 1A, BRONX, NY 104690000"- "the Crump Address."

14.     Based on my review of records from, and conversations with, members of the New York City Housing Authority ("NYCHA"), I further know that JAHQUAN CRUMP and TAFARI CRUMP, the defendants, are brothers and that they both live at the Crump Address.

15.     Based on my review of publicly available information, I further know that, at the time of the fraudulent deposit into the Chase Account, JP Morgan Chase was insured by the Federal Deposit Insurance Corporation.

<u>JAHQUAN CRUMP - Victims 2 to 8</u>

16.     Based on my review of account opening records from Key Bank and the DMV, I know that on or about March 18, 2019, someone opened a bank account at Key Bank ("Key Bank Account-1") in the name of a particular individual. Once again, the address listed on the account does not match the address reported of the supposed account owner. It instead lists "1210 BURKE AVE APT 1A, BRONX NY 10469"—the Crump Address.

17.     Based on my review of account statements for Key Bank Account-1, I know, among other things, the following:

a.     During the month after Key Bank Account-1 was opened, someone deposited approximately seven checks totaling approximately $55,000 into the account. The checks were written from accounts in the names of various victims ("Victims 2-7") located across several counties including, among others, Westchester and Rockland counties. According to records from Key Bank, each of the seven checks deposited Key Bank Account-1 was either forged, counterfeit, or otherwise unauthorized.

b.     Because many of these fraudulent checks were deposited electronically, there is also an IP Address associated with several of the above transactions. Based

on my review of that IP Address, I know that the IP Address from which the checks were deposited is the same as the one that accessed the Chase Account: 96.246.185.85. As set forth above, Verizon Fios account documents list JAHQUAN CRUMP, the defendant, as the owner of this IP Address, and list the address for the account as the Crump Address.

18.    I further know that an entity owned by JAHQUAN CRUMP, the defendant, has received thousands of dollars of wire transfer from Key Bank Account-1. Specifically, based on my review of account statements for Key Bank Account-1, I know that in or about March and April 2019—the month after the account's opening—a bank account for an entity called "Demarco Live IN Bronx USA" received approximately $15,000 in wire transfers from Key Bank Account-1.

19.    Based on my review of account documents from TD Bank, I know that Demarco Live, Inc. is a business account owned by JAHQUAN CRUMP, the defendant. The entity is a domestic business corporation incorporated in the State of New York on or about May 1, 2017. The account opening documents further list "legal address" for the account as "1210 Burke Ave Apt 1A, Bronx, New York 10469," the Crump Address. I further know that in May and June of 2019, over $15,000 dollars were transferred from the Demarco Live, Inc. account into JAHQUAN CRUMP's personal account at TD Bank.

20.    Based on my review of publicly available information, I know that at the time the seven fraudulent checks were deposited into Key Bank Account-1, the deposits of Key Bank were insured by the Federal Deposit Insurance Corporation.

<u>JAHQUAN CRUMP – Victims 9 to 12</u>

21.    Based on my review of account opening records from Wells Fargo Bank and the DMV, I know that in or about March 2019, someone opened a bank account at Wells Fargo (the "Wells Fargo Account") in the name of a particular individual ("Victim-9"). Once again, the address listed on the account does not match the address reported in DMV records of the supposed account owner. It instead lists "1210 BURKE AVE APT 1A, BRONX NY 10469"—the Crump Address.

22.    I further know, based on account statements for the Wells Fargo Account, that four checks from three individuals ("Victim-10," "Victim-11," and "Victim-12," respectively) for approximately $8,100 were deposited into the account. After these checks were deposited, Demarco Live, Inc. made approximately $4,000 of charges against the Wells Fargo Account. As previously noted, account documents from TD Bank List the owner of Demarco Live, Inc. as JAHQUAN CRUMP, the defendant. It appears that Wells Fargo reversed the remaining deposits into the Wells Fargo Account as fraudulent before the remaining money could be withdrawn.

23.    Based on my review of an interview with Victim-10 by the Irvington Police Department in or about March 2019, I know that Victim-10 never wrote a check to Victim-9.

24.     Based on my review of complaints written by Victim-11 and Victim-12, to a particular hospital (the "Hospital"), I know that Victim-11 and Victim-12 wrote checks to the Hospital that never arrived. The checks were instead deposited into Victim-9's account, even though Victim-11 and Victim-12 never wrote checks to Victim-9.

25.     Based on my comparison of ATM footage from Wells Fargo on or about March 25, 2019, DMV records, and various photos from social media pages associated with JAHQUAN CRUMP, the defendant, I believe that the person who deposited the altered check from Victim-10 into the Wells Fargo Account was JAHQUAN CRUMP.

26.     In addition, based on my comparison of ATM footage from Wells Fargo on or about April 3, 2019, DMV records, and various photos from social media pages associated with JAHQUAN CRUMP, the defendant, I believe that the person who deposited the altered check from Victim-11 into the Wells Fargo Account was JAHQUAN CRUMP.

27.     In addition, based on my comparison of ATM footage from Wells Fargo on or about April 4, 2019, DMV records, and various photos from social media pages associated with JAHQUAN CRUMP, the defendant, I believe that the person who deposited the altered check from Victim-12 into the Wells Fargo Account was JAHQUAN CRUMP.

28.     Lastly, based on my review of publicly available information, I know that Wells Fargo was insured by the Federal Deposit Insurance Corporation on the date that the funds were deposited into the Wells Fargo Account.

<u>TAFARI CRUMP - Victims 13 and 14</u>

29.     Based on my review of an incident report filed with the New York State Police ("NYSP") on or about May 4, 2019, I know, among other things, the following:

a.      On or about May 4, 2019, an officer of NYSP ("Officer-1") interviewed complainant (the "Complainant") who spoke on behalf of his father ("Victim-13").

b.      The Complainant stated, in sum and substance, that Victim-13 has dementia, is legally blind, hard of hearing, and permanently living in a nursing home. Victim-13 also receives social security payments into a primary account at Bank of America (the "Bank of America Account".

c.      The day prior to the interview, on May 3, 2019, the Complainant went to visit Victim-13 and noticed that Victim-13 had received several letters from different banks congratulating him on opening new accounts. Victim-13, however, had done no such thing. The Complainant subsequently checked the Bank of America Account. The Complainant knew that Victim-13 was supposed to have approximately $30,000 in the account. When he received the statement, only $2,313.40 remained in the account.

30.     Based on my review of account statements for the Bank of America Account, I know, that someone transferred approximately $30,000 out of Victim-13's account in

April 2019. These transfers were made to a number of different accounts, including at least two bank accounts that were opened in Victim-13's name (respectively, the "Key Bank Account-2" and the "Banco Popular Account"). In addition, on or about April 11, 17, and 18, 2019, approximately $1,500 was transferred from Victim-13's account directly into an account in the name of TAFARI CRUMP, the defendant.

31.     Based on my review of account statements from Key Bank, I know that Key Bank Account-2 was opened in Victim-13's name in or about April 2019. This account appears to be fraudulent. For instance, although the account was opened in the name of Victim-13, the mailing address for the account is not Victim-13's address. Instead, the listed address is "1210 Burke Ave, 1A, Bronx, Ny 10469," the Crump Address. In addition, the IP Address used to create the account is the same as the IP Address used to create the Chase Account and deposit fraudulent checks into Key Bank Account-1: 96.246.185.85. As previously noted, this IP Address is registered to JAHQUAN CRUMP, the defendant, and brother of TAFARI CRUMP, the defendant.

32.     I further believe that TAFARI CRUMP, the defendant, has deposited altered checks into Key Bank Account-2. For instance, based on my review of deposit records for Key Bank Account-2, I know that on or about April 24, 2019, a check written from the bank account of a tenth victim ("Victim-14") was deposited into Key Bank Account-2. The payee on that check was Victim-13.

33.     Based on my interview of Victim-14, I know that she has never written a check to Victim-13.

34.     In addition, based on my comparison of ATM footage from Key Bank on April 24, 2019, DMV records, and various photos from social media pages associated with TAFARI CRUMP, the defendant, I believe that the person who deposited the altered check into Key Bank Account-2 on April 24, 2019 was TAFARI CRUMP.

35.     Lastly, based on my review of publicly available information, I know that Key Bank and Bank of America are insured by the Federal Deposit Insurance Corporation.

WHEREFORE, deponent prays that JAHQUAN CRUMP and TAFARI CRUMP, the defendants, be imprisoned or bailed, as the case may be.

NICHOLAS IANNONE
Postal Inspector
United States Postal Inspection Service

Sworn to before me this
8th day of October, 2019

THE HONORABLE PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK